IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| MIRANDA WEBB, | ) |
| --- | --- |
| Plaintiff, | ) ) ) |
| vs. | ) CIVIL ACTION NO. _____ |
| DREXEL UNIVERSITY, | ) ) ) |
| Defendant. | ) ) |

## PLAINTIFF'S EMERGENCY MOTION FOR PRELIMINARY INJUNCTION

### I.    INTRODUCTION

For the reasons set forth in detail below, in the Verified Complaint, and in the accompanying Memorandum of Law in Support of this motion, Plaintiff Miranda Webb ("Ms. Webb") respectfully moves the Court for a preliminary injunction requiring Defendant Drexel University ("Drexel") to (1) cease blocking her from enrolling in her clinical coursework immediately, pending full resolution of this dispute, and (2) release Ms. Webb's grades from the Fall 2018 clinical rotations. Plaintiff so moves to protect Ms. Webb's rights under Title IX of the Education Act of 1972 ("Title IX"), 20 U.S.C. §1681, *et seq.*

In *Jackson v. Birmingham Bd. Of Educ.*, the Supreme Court held that "Title IX's private right of action encompasses suits for retaliation, because retaliation falls within the statute's prohibition of intentional discrimination on the basis of sex." *Jackson v. Birmingham Bd. Of Educ.*, 544 U.S. 167, 174, 178 (2005) ("[W]hen a funding recipient retaliates against a person because he complains of sex discrimination, this constitutes intentional 'discrimination' 'on the basis of sex,' in violation of Title IX."). The Court explained, "if retaliation were not prohibited,

1

Title IX's enforcement scheme would unravel." *Id.* at 180. As set forth in detail below, Drexel has, in violation of Title IX, unlawfully retaliated against Ms. Webb for filing a complaint of sexual harassment with the University, by banning her from clinicals and indicating their intention to pursue her expulsion once the Title IX investigation is concluded.

Ms. Webb further states,

1. Ms. Webb is a nursing student at Drexel University in the College of Nursing and Health Professions' ("College of Nursing") Accelerated Career Entry Program ("ACE Program").

2. Ms. Webb has been a student in the ACE Program Since September 2017.

3. Ms. Webb anticipated graduating from the ACE program in March 2019 with a Bachelor of Science in Nursing degree, subsequently sit for the boards, and begin her career as a licensed nurse.

4. During her first two quarters as a student in the ACE Program, Ms. Webb earned Dean's list recognition. During that time, she successfully completed three (3) out of the nine (9) clinical rotations required to graduate from the ACE Program.

5. Ms. Webb participated in three (3) more clinical rotations her third quarter.

6. During her third quarter, Ms. Webb was repeatedly sexually harassed by David A. Bullen, an adjunct professor at Drexel University's College of Nursing.

7. Ms. Webb shared details about the ongoing sexual harassment via email with another Drexel Professor.

8. On November 1, 2018, that professor responded to an email from Ms. Webb expressing "significant concern," provided information about making a Title IX report, and informed Ms. Webb that as a mandatory reporter, she was copying Dr. Deanna Schaffer, the chair of the ACE Program, on her response.

9. That very same day, Ms. Webb was working with a nurse at CHOP performing various tasks, including flushing IV lines with normal saline, as part of her pediatric clinical rotation. Ms. Webb was instructed by the supervising nurse to check on a 15-year-old patient. The adolescent patient expressed concern that her IV may be clogged. Ms. Webb assessed the IV line for signs of infection or comprise to the integrity of the line and observed the IV to be intact. At the patient's request and with the consent of the patient's mother, Ms. Webb conducted a flush of the patient's IV.[1]

10. Ms. Webb immediately reported the flush to the supervising nurse at CHOP. The nurse thanked Ms. Webb and mentioned that this patient routinely requests her IV to be flushed. Later that day, the pediatric clinical professor from Drexel informed Ms. Webb that she should not have administered the flush without supervision, but that it was not a major issue, that Miranda was "not in any trouble," and she would be issued only a clinical communication.

11. CHOP did not take any action to bar Ms. Webb from her pediatric clinical. Neither did Drexel at that time. Ms. Webb was not instructed to leave the clinical setting,[2]

---

[1] Ms. Webb pushed approximately 3-4mls of 0.9% normal saline solution into the IV line. At no point did Ms. Webb administer medication of any kind.

[2] The ACE Program Student Handbook states that "[w]hen an incident occurs which a faculty member believes may constitute an unsafe practice, the faculty member *will* immediately instruct the student to leave the clinical setting. The faculty member *will* also immediately notify the course chair." *Drexel University College of Nursing & Health Programs, Accelerated Career Entry, Student Handbook* ("*ACE Student Handbook*"), Section VIII Clinical/Practicum Guidelines, Policy M(4) (emphasis added).

3

rather, Ms. Webb was permitted to continue to see pediatric patients at her next pediatric clinical session and to continue in all three of her clinical rotations for another twelve days.[3]

12. Upon information or belief, neither CHOP nor Drexel reported the incident to the Pennsylvania Patient Safety Reporting System, as they ordinarily would in the event of a clinical "near miss." *See* 40 P.S. §§ 1303.308; 1303.313. Upon information or belief, the IV flush also was not reported to CHOP's Office of Clinical Quality Improvement, the Office of Safety and Medical Operations, or the Office of Patient Safety and Quality, as would have been required if CHOP and/or Drexel believed that there had been a serious threat to patient safety.

13. On November 6, 2018, Ms. Webb decided to file a Title IX grievance against Professor Bullen as recourse to the sexual harassment she endured. Ms. Webb notified Drexel of her decision.

14. Three days later, Ms. Webb received an email from Dr. Schaffer, demanding a meeting to discuss Ms. Webb's progression in the ACE Program and the warning Ms. Webb received from the pediatric clinical professor regarding the IV flush.

15. On November 12, 2018, Ms. Webb met with Dr. Schaffer. In this meeting, Dr. Schaffer brought up incidents that took place weeks and months prior (none of which had resulted in anything more than a "clinical communication") and asserted that Ms. Webb's flushing of the patient's line was now seen by Drexel as "egregious."

16. On November 13, 2018, following her filing her Title IX grievance with Drexel and two weeks prior to the end of the quarter, Drexel banned Ms. Webb from her clinicals.

---

[3] In addition to the pediatric clinical, Ms. Webb was also in a labor and delivery clinical, and a medical/surgical clinic.

4

17.     From November 13, 2018, and through to the present, Defendant has, citing the pretextual reason of "patient safety," refused to allow Ms. Webb to participate in her required clinical rotations.

18.     On November 18, 2018, Ms. Webb received a letter from Drexel stating that as a result of "violations of various ACE Program policies," Dr. Schaffer was making a recommendation to the Student Conduct Committee that Ms. Webb be dismissed from the ACE Program.

19.     Prior to the Title IX grievance, Dr. Schaffer decided that those same various complaints against Ms. Webb were not worth consideration by the Conduct Committee, including the IV flush. After the Title IX grievance, however, she suddenly decided *all* of them were worth submission to the Committee. Prior to the Title IX grievance, Drexel did not consider Ms. Webb a safety threat to patients and did not follow its policies regarding patient safety; after the Title IX grievance, she was banned from all clinical rotations.

20.     Drexel has withheld Ms. Webb's grades for two of the three clinical rotations she participated in during Fall 2018.[4] Ms. Webb completed all associated classroom instruction and coursework but was unable to physically attend the clinical portion for the final two weeks, due to the ban implemented by Drexel. Having completed most of the requirements of both clinicals, Ms. Webb should have received a final grade in each clinical at the end of the quarter.

21.     Ms. Webb's fourth and final quarter began January 7, 2019. Defendants prohibited Ms. Webb from registering for the final three clinical rotations necessary to obtain her degree as anticipated in March 2019.

---

[4] Ms. Webb received a "pass" in the medical/surgical clinical. Clinicals are graded as pass or fail.

5

22. Defendants have notified Ms. Webb that they intend to dismiss her from the ACE program if Drexel, in its sole discretion, finds that Professor Bullen did not harass her.

23. As a result of the Defendant's retaliation, Ms. Webb has lost access to an education for which she continues to pay tuition and Defendants continue to accept payment.

24. Ms. Webb must complete three clinicals during the fourth quarter that began on January 7, 2019, in order to graduate as anticipated in March 2019.

25. Plaintiff Ms. Webb now seeks the Court's intervention so that she may immediately enroll in and begin three clinical rotations.

26. As set forth in the accompanying Memorandum of Law, under traditional preliminary injunction standards, Ms. Webb should be immediately enrolled in three clinicals and permitted to attend each clinical. Additionally, Ms. Webb should immediately receive grades for the two clinical rotations she participated in during the Fall 2018. Without such relief she will suffer irreparable harm. She is likely to succeed on the merits of her case. And the public interest and balance of hardships both favor the granting such relief. *See McNeil Nutritionals, L.L.C. v. Heartland Sweeteners, L.L.C.*, 511 F.3d 350, 356-57 (3d Cir. 2007).

27. As set forth in detail in the accompanying Memorandum of Law, Ms. Webb will suffer irreparable harm if she is denied the right to be free of retaliatory actions and participate in the clinical rotations required for graduation.

28. In addition, Ms. Webb can show a strong likelihood of success on the merits as she can make out a claim of retaliation under Title IX, 20 U.S.C. §1681, *et seq.*, in that:

    a. Ms. Webb engaged in activity protected by Title IX when she filed a complaint of sexual harassment with Drexel, *see Doe v. Mercy Catholic*

*Med. Ctr.*, 850 F.3d 545, 564 (3d Cir. 2017), *Linson v. Trustees of the Univ. of Pa.*, 1996 U.S. Dist. LEXIS 12243, *15-16 (E.D. Pa. August 21, 1996), *Grassinger v. Welty*, 818 F. Supp. 862, 871 (W.D. Pa. 1992), *aff'd*, 993 F.2d 224 (3d Cir. 1993);

b. Ms. Webb suffered adverse actions after engaging in protected activity including: (1) being banned from all clinical rotations from November 13, 2018 to present; (2) not receiving grades for two out of the three clinical rotations she was in at the time of the ban; and (3) being informed that her record would be sent to the Student Conduct Committee, with a recommendation that she be dismissed from the ACE Program, *see Mercy Catholic*, 850 F.3d at 564; and

c. A causal connection between the two exists in that Ms. Webb was banned from all clinicals seven days after officially informing Drexel of her filing a Title IX grievance. Five days after that, Ms. Webb was informed of the Drexel's decision to recommend to the Student Conduct Committee that she be dismissed from the ACE Program. In addition to the sufficiently suggestive temporal timing, the reasons proffered as a basis for Drexel's actions were a pretext for retaliation, *see Mercy Catholic*, 850 F.3d at 564, *Lin v. Rohm & Haas Co.*, 293 F. Supp. 2d 505, 512-13 (E.D. pa. 2003), *Lindsay v. Yates*, 578 F.3d 407, 418 (6th Cir. 2009), *Anderson v. PA State Police*, 2018 U.S. Dist. LEXIS 54516, *32 (M.D. Pa. March 29, 2018).

29. Absent an injunction, Ms. Webb will suffer immediate and irreparable harm, which far outweighs any potential harm to Drexel.

30. The public interest of the United States strongly favors and is served by preventing and combatting discrimination on the basis of sex. *See* 20 U.S.C. §1681 et. seq.; 45 C.F.R. §1681 et. seq; *See also Jackson v. Birmingham Bd. Of Educ.*, 544 U.S. 167 (2005) ("[W]hen a funding recipient retaliates against a person because he complains of sex discrimination, this constitutes intentional 'discrimination' 'on the basis of sex,' in violation of Title IX."). That strong public interest is served by Title IX and its prohibition of retaliation. *See* 20 U.S.C. §1681 et. seq.; 45 C.F.R. §1681 et. seq; *See also Jackson v. Birmingham Bd. Of Educ.*, 544 U.S. 167, 178 (2005).

31. Accordingly, in view of the foregoing and for the reasons set forth in the Verified Complaint and accompanying Memorandum of Law, Ms. Webb moves the Court to issue an order directing Defendant to:

    a. Immediately permit Ms. Webb to enroll in, and return to, her clinicals, pending full resolution of this dispute in accordance with Federal Rule of Civil Procedure 65; and

    b. Immediately release Ms. Webb's grades from her Fall 2018 clinical rotations.

Respectfully submitted,

*[signature]*

Michael D. Raffaele (PA ID 91615)
Kershenbaum & Raffaele, LLC
1230 County Line Road
Bryn Mawr, PA 19010
T: (610) 922-4200
F: (610) 646-0888
Michael@MyKidsLawyer.com

*Counsel for Plaintiff Miranda Webb*